IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DAMARIS PEREYRA-CARRASCO,

Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

Defendant.

CIVIL NO. 14-1225 (CVR)

## OPINION AND ORDER

## INTRODUCTION

Plaintiff Damaris Pereyra-Carrasco brings this suit alleging damages from a slip and fall accident she suffered on June 20, 2012 at the San Juan Veteran's Hospital ("VA") when she was accompanying her husband on a medical visit.  Plaintiff avers the accident occurred as a result of large amount of water that had accumulated in an area of the hospital due to rain.   Plaintiff fell because the area was very wet.  She alleges having suffered significant physical limitations and whole person impairment, and has undergone extensive medical treatment and care.

The United States of America ("United States") is the proper Defendant in this case because the VA operates as a medical institution for the benefit of those who have served in the armed forces of the United States.  Under federal law, a plaintiff injured by the alleged negligent acts or omissions of the United States must bring suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2401 (b), and as a prerequisite, must first file an administrative claim with the United States before being able to file suit in this court. Plaintiff so complied, filing her Administrative claim on July 8, 2013.  The United States

denied Plaintiff's claim on December 19, 2013, and Plaintiff timely brought suit in this forum.

Before the Court now are two motions for summary disposition of this case, to wit, one filed by co-Defendant Walsh Construction Company Puerto Rico ("Walsh Construction") and the other by co-Defendant Unites States. (Docket Nos. 41 and 46, respectively). Before the Court also are Plaintiff's oppositions thereto (Docket Nos. 52 and 53, respectively); and both co-Defendants' replies to Plaintiff's oppositions. (Docket Nos. 54 and 59, respectively).

The United States avers the conditions which caused Plaintiff to slip and fall were a result of unexpected and torrential rains, and that it took all pertinent safety measures in light of that emergency situation.  Thus, it claims that it cannot be held liable. Walsh Construction's defense, on the other hand is two-fold: (1) the complaint is time barred and; (2) it cannot be liable for any damages because it was not performing any work in the area where Plaintiff fell.  Rather, Walsh Construction was working in another area of the VA Hospital.

Plaintiff counters arguing that summary disposition is unwarranted, as issues of fact remain as to all her claims.  Regarding the United States, Plaintiff posits the amount of rainfall  was not really an "emergency", but rather, that an area of the roof over where she slipped was exposed to the elements, causing rain water to come in to the area where she fell.  As such, the United States was negligent in its failure to maintain the area dry.  She

further avers that, if the situation was so grave as the United States claims, where there was a torrential rainfall, then the United States should have closed off the area to pedestrians.

As for Walsh, although Plaintiff admits to filing suit over one year after the accident, she states she did so within the one year prescriptive period of when she had notice of who caused her injury.  Thus, under Puerto Rico law, her claim is not time barred.  Regarding Walsh's argument that it was not performing work in the area of the accident, Plaintiff states there are issues of fact in controversy that prevent summary disposition of this claim because the United States has pointed its finger at Walsh, claiming the exact opposite, that is, that Walsh *was* performing work in the are where she fell.

For the reasons explained herein below, both Motions for Summary Judgment filed by Walsh and the United States are DENIED.  (Docket Nos. 41 and 46).

## STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c).  Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry

v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

The First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); see also, Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-226 (D.P.R. 2012). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is -and what is not- genuinely controverted.' " Hernández, 869 F.Supp.2d at 7 (quoting Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)). Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of

Damaris Pereyra Carrasco v. United States of America, et al.
Civil No. 14-1225 (CVR)
Opinion and Order
Page 5

facts." Loc. Rule 56 (c). If they so wish, they may submit a separate statement of facts which they believe are in controversy. Facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir. 2010) and Colón, 869 F.Supp.2d at 226. Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril." Hernández, 486 F.3d at 7.

## FINDINGS OF FACT

With the above in mind, and pursuant to the parties' submissions, the Court deems the following facts uncontested.

1.     Plaintiff Damaris Pereyra-Carrasco is of legal age, married and at the time of the events was a resident of Fajardo, Puerto Rico. USA Exhibit 1, p. 14, lines 1-2 and 21-22; p. 15, lines 21-22.

2.     On June 29, 2012, Plaintiff accompanied her husband, a veteran, to his medical appointment at the VA Hospital, which she did on a regular basis, between 3-4 times a month. USA Exhibit 1, p. 27; lines 17-23, p. 28, l. 21-23.

3.     Before the day of the facts object of the Complaint, during her previous visits with her husband to appointments at the VA Hospital, Plaintiff noticed that there was construction work being performed at the VA Hospital. Walsh Exhibit 2, page 84, lines 8-13, p. 95-96; p. 177-178.

4.     When Plaintiff and her husband arrived, they parked their vehicle and walked under a light rainfall to a gazebo located across the street from the VA

Hospital's entrance located closest to the VA Emergency Room ("ER"). Walsh Exhibit 2, p. 27-32; p. 49-60; p. 74-76.

5.   At that particular time it was raining lightly, and neither Plaintiff nor her husband had an umbrella or cape to protect them from getting wet by the rainfall.  Walsh Exhibit 2, p. 54, l. 19-23, p. 55, l. 7-23.

6.   Plaintiff had previously accompanied her husband to medical appointments, and they usually stopped first at the gazebo to smoke a few cigarettes before entering the VA Hospital through the entrance across the street from the gazebo and closest to the ER entrance; they did the same thing on the day object of the Complaint. Walsh Exhibit 2, p. 43, l. 5-14; p. 47, l. 2-7; p. 74, l. 14-24, p. 75, l. 1-8

7.   On the day of the incident, Plaintiff remained at the gazebo for about fifteen minutes, or the time it took her to smoke her cigarette.  While Plaintiff and her husband were smoking their cigarettes in the gazebo, prior to entering the VA Hospital, the light rain turned much heavier.   Walsh Exhibit 2, p. 47, l. 2-7; p. 49, l. 14-19; p. 53, lines 7-10; p. 54, lines 1-3. P. 75, l. 5-9.

8.   When it was the time for the appointment, Plaintiff and her husband walked under the rain for the second occasion, this time under a heavier rainfall, from the gazebo to the VA Hospital ER entrance. Walsh Exhibit 2, p. 49-60; p. 68-72; p. 74-76.

9.      On the day of the incident (June 29, 2012), Plaintiff was wearing jeans, a sleeveless blouse, her prescription bi-focal eyeglasses, flat shoes with a thin rubber sole and was carrying a purse about 12 inches long by 8 inches tall strapped over her shoulder.  USA Exhibit 1, p. 56, lines 10-23; p. 62, lines 13-21; p. 69, lines 21-23; p. 70, lines 1-21.

10.     Plaintiff got wet while walking from the gazebo to the ER entrance.  USA Exhibit 1, p. 68, lines 16-17.

11.     Plaintiff then attempted to dry her wet prescription bifocal glasses with her shirt, which was also wet.  Walsh Exhibit 2, p. 68, l. 21-22, p. 69, l. 1-9.)

12.     When the Plaintiff entered the ER she headed towards an elevator.  To get there she had to walk through the ER lobby and the ER hallway.  Her husband was walking in front of her, a little more than three feet ahead.  USA Exhibit 1, p. 76, lines 1-23, p. 77, lines 1-22.

13.     When Plaintiff went inside the ER, wet from the rain, with wet shoes and with foggy prescription glasses, she saw a lot of water pouring in from the ceiling in the ER hallway; it seemed to be raining indoors; water fell on her from the ceiling.  USA Exhibit 1, p. 78, lines 3-4; p. 79, line 23; p. 80, lines 1-3; p. 196, lines 20-23; p. 197, lines 1-6.

14.     Plaintiff admits that, once she entered through the VA's ER entrance, and before walking in the permanent hallway where the alleged accident happened, she saw:

a. Water percolating from the ceiling of the permanent hospital hallway. Walsh Exhibit 2, p. 78-85; p. 180-187.

b. Water accumulating up to approximately ½ inch of depth on the floor of the permanent hospital hallway. Walsh Exhibit 2, p. 87-89; p. 180-182.

c. VA employees and/or maintenance employees who were working on the situation, mopping, drying and removing the water that had accumulated on the floor of the permanent hospital hallway. Walsh Exhibit 2, p. 78-85; p. 97, l. 1-16.

15. While inside the ER lobby, Plaintiff was able to see buckets that were similar in size and shape to big paint buckets. The buckets were in the middle of the lobby and a line of buckets was on the left hand side so visitors could walk through into the ER hallway.  USA Exhibit 1, p. 78, lines 1-23; p. 79, lines 1-3; p. 195, lines 3-12.

16. Plaintiff was walking on the left side of the lobby and to the left side of the line of buckets because maintenance personnel were working on the right side of the line of buckets. USA Exhibit 1, p. 81, lines 20-23; p. 82, lines 1-6.

17. Three wet floor signs were placed in the ER lobby. Water diverters were also installed with regular follow up.  Walsh Exhibit 2, p. 5, Answer 8; Walsh Exhibit 3, p. 9, Answer 16.

18.     The VA has an established a Maintenance Contract with Design Build, S.E. to provide maintenance services to the VA, which includes daily service to the ER. Design Build, S.E. also has a daily cleaning schedule for the ER.  USA Exhibit 2, p. 4, Answer 6(b); USA Exhibit 4, 10(a) and (b); USA Exhibit 3, p. 5, Answer 7(e) and (f), USA Exhibit 6 and Exhibit 7.

19.     The personnel who was in charge of mopping, drying and removing the water was comprised by VA employees and employees of the maintenance contractor, Design Build, S.E., not Walsh personnel.  Walsh Exhibit 6, Answers 3, 9, 13, 14, 16, 18, and 21.

20.     Due to the amount of water, the daily cleaning schedule was altered and personnel were moved to assist in cleaning areas affected by the flooding. USA Exhibit 2, p. 2, Answer 1(b).

21.     The following personnel provided assistance with the flooding: a) María Cosme, DB Supervisor; b) Gualberto Martínez, DB Supervisor; c) Raúl Ortíz, DB Supervisor; d) José González, DB Leader; e) Israel González Acevedo, DB Housekeeping Aide; f) Cristina Angleró, DB Housekeeping Aid; g) José Pérez, DB Housekeeping Aide; h) José Figueroa, DB Housekeeping Aide; I) Gladys Merced, Housekeeping Aide (VA Employee); and j) Cannen Rojas, Housekeeping Aide (VA Employee). USA Exhibit 2, p. 2, Answer 1 (c); USA Exhibit 3, p. 6, Answer 9 (a)-(j).

Damaris Pereyra Carrasco v. United States of America, et al.
Civil No. 14-1225 (CVR)
Opinion and Order
Page 10

22.  Plaintiff does not remember if a caution sign was posted nor if she stated to VA personnel that a "caution sign was posted" in the area where she fell. Plaintiff had a better recollection of the facts at the time of the incident because they had just happened.  USA Exhibit 1, p. 103, lines 3-14; p.104, lines 2-4.

23.  When Plaintiff arrived at the ER's lobby it was obvious the floor was wet; that she had arrived to the ER's lobby wet from the rain; that the buckets were there because they were being used by maintenance personnel to guide the persons entering the ER and to pick up the water. Plaintiff stated the area was really wet, like flooded and that could have been from ¼ to ¾ of an inch of water, and acknowledges that maintenance personnel were working fast to take out all of the water. USA Exhibit 1, p. 82, lines 7-10; p. 87, lines 4-23; p. 88, line 1-12.

24.  Plaintiff stated that a pond virtually existed at the hospital's entrance. USA Exhibit 1-E.  Plaintiff knows that walking in a puddle of water can cause people to slip. Walsh Exhibit 2, p. 87, l. 18-24, p. 88, l. 1-14, p. 181, l. 21-23.

25.  Plaintiff saw there were at least 10 people walking in front of her in a line on the left side of the ER lobby and some were walking behind her, all of them were walking on the same wet floor and none of them fell. USA Exhibit 1, p. 90, lines 9-16.

26. Plaintiff, after being well aware of the torrential rains, the water pouring in through the ceiling, the ¼ to ¾ inches of water on the ER's lobby floor, the three wet floor signs placed in the ER's lobby and the extreme efforts of the maintenance personnel to extract the water and dry the hallway, kept walking on it (as did others) and her left foot slipped forward and she fell backwards in the ER hallway after she had been walking a few feet in the wet permanent hallway.  USA Exhibit 1, p. 91, lines 18-23; p. 92, lines 1-20; Walsh Exhibit 2, p. 89, l. 7-16.

27. Plaintiff's husband did not witness her fall because he was walking in front of her and had his back towards her.  USA Exhibit 1, Plaintiff's Deposition: p. 97, lines 16-19.

28. The VA employees and/or maintenance contractor employees present attended to Plaintiff immediately and proceeded to take her in a wheelchair to the ER, adjacent to the permanent hallway in question.  Walsh Exhibit 2, p. 97-98).

29. Plaintiff reported to the ER personnel that she had pain in her back, left ankle and head.  Walsh Exhibit 2, p. 97-102; and Walsh Exhibit 2-B, pages 14-18.

30. X-rays were taken and revealed no fractures or dislocations.  Walsh Exhibit 2, p. 97-102; Walsh Exhibit 2-B, pp. 1-18.

31. According to the VA Caribbean Healthcare System Associate Director, Jaime E. Marrero, P. E., security measures were taken (wet floor signs were placed)

in the area due to the of sudden rainfall by José I. Acevedo, employee of the maintenance contractor, prior to Plaintiff's arrival that day. Walsh Exhibit 6, answers 3, 9, 13, 14, 16, 18, and 21.

32. Notes taken by a VA ER nurse and a VA ER doctor on Plaintiff's VA ER Medical Record of the treatment she received immediately after the alleged slip and fall indicate that there were wet floor signs posted in the area.  Walsh Exhibit 2, p. 102-110; Walsh Exhibit 2-B, pages 7 and 14.

33. Plaintiff's medical record provides the following: "[s]tates floor was wet due to rain outside. Caution sign was posted. No loss of consciousness, denies nausea, vomiting, vision changes & chest pain. Describes head pain as localized to the front of her head similar to a migraine headache. Patient states did not take HTN medication yet today." USA Exhibit 1-B, p. 5.

34. At the time of her discharge, Plaintiff denied having pain and refused Tylenol at the Emergency Department. USA Exhibit 1,-B, p.13, § 2; p. 16, § "Plan".

35. Following her discharge on June 29, 2012 from the VA, Plaintiff took medication prescribed to her husband, namely Tramadol and Oxycodone. These medications were prescribed exclusively for her husband's medical conditions and needs.  USA Exhibit 1, p. 134, lines16-23; p. 135, lines 1-7.

36. On July 1, 2012, Plaintiff went to the ER of her local CDT Caribbean Medical Center in Fajardo, Puerto Rico complaining of pain.  Walsh Exhibit 2, p. 132-145; Walsh Exhibit 2-D. She was administered Kenalog, Toradol, Valium and

Cipro. USA Exhibit 1, p. 141, lines 16-23; p. 142, lines 1-14; USA Exhibit 1-D, p. 12, .

37.     X-rays were taken and failed to reveal any fractures or dislocations.  Walsh Exhibit 2, p. 132-145; Walsh Exhibit 2-D.

38.     Plaintiff was given, at the CDT, pain medication for the pain, antibiotics for another condition not related to the facts of the case, and discharged that same day.  Walsh Exhibit 2, p. 132-145; Walsh Exhibit 2-D.

39.     Plaintiff filed  an FTCA administrative claim against the U.S. Department of Veterans Affairs on July 8, 2013, which was received on July 11, 2013, one year and twelve days after the day of the facts. Walsh Exhibits 3 and 11.

40.     Plaintiff admitted that, previous to the date of the incident, she had knowledge that there was construction work being performed in the VA Hospital.  Walsh Exhibit 1; Walsh Exhibit  3, page 1, section 8; Walsh Exhibit 2, page 84, lines 8-13; p. 95-96; p. 177-178.

41.     The VA denied Plaintiff's administrative claim on December 19, 2013 adducing that Walsh was the entity performing construction work in the VA Hospital.  Walsh Exhibit 11, p. 1 - 2.

42.     Plaintiff filed Complaint against the United States and Walsh on March 18, 2014, approximately one year and eight months after the day of the alleged slip and fall.  Walsh Exhibit 1.

43.     Plaintiff went back to the VA Hospital several days after the events in order
to take photographs of the exact location of the alleged slip and fall.  Walsh
Exhibit 2, p. 112-130; Walsh Exhibit 4, answer 13.

## LEGAL ANALYSIS

### A.     United States of America.

As is well known, Puerto Rico's general negligence statute, article 1802 of the Civil Code, states that "a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage done." P.R. Laws Ann. tit. 31, § 5141.  In order to establish liability due to negligence, a plaintiff must show that the defendant (1) owed a duty to the plaintiff; (2) the defendant breached that duty, and (3) that the plaintiff suffered damages, and that those damages were caused by the breach of duty (i.e., proximate cause).  Calderón-Ortega v. United States, 753 F.3d 250 (1st Cir. 2014). Yet, "...foreseeability is a central issue in these cases, as it is an element of both breach of duty and proximate cause." Vázquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007).

In most negligence cases, a defendant's duty "is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." Id. (citing Ortiz v. Levvitt & Sons of P.R., Inc., 1 P.R. Offic. Trans. 407, 101 D.P.R. 290 (1973)). "Foreseeability is a component of the breach [element] because a defendant only breaches his duty if he acted (or failed to act) in a way that a reasonably prudent person would

foresee as creating undue risk." Id. (internal quotation marks omitted). Therefore, Plaintiff must show the foreseeable risks created by the defendant's acts or omissions in order to meet this element. Id. Once Plaintiff has demonstrated that the defendant was negligent (and thus, breached the duty of care), she must then demonstrate that the defendant's negligence actually caused her injuries and the defendant could have reasonably foreseen that the injuries would result from his acts or omissions. Id.; Marshall v. Pérez Arzuaga, 828 F.2d 845, 849 (1st Cir. 1987) (citing Jiménez v. Pelegrina, 112 P.R. Dec. 881, 885 (1982)).

In the case at hand, the first element of the claim is apparent: one who operates a business undeniably owes a duty of reasonable care to business invitees. See Cotto v. Consol. Mut. Ins. Co., 16 P.R. Offic. Trans. 786, 793, 116 D.P.R. 644 (P.R.1985).

Next in the inquiry is a breach of that duty: a business invitee who alleges such a breach must show "that the injury was reasonably foreseeable (and, thus, could have been avoided had the defendant acted with due care)." Woods-Leber v. Hyatt Hotels of P.R., Inc., 124 F.3d 47, 50–51 (1st Cir.1997); see also Coyne v. Taber Partners I, 53 F.3d 454, 459-60 (1st Cir.1995).  It follows, therefore, that "[i]n a premises liability  case, fault ordinarily depends on knowledge." Nieves-Romero, 715 F.3d at 379; see Woods-Leber, 124 F.3d at 50 n. 5 (noting that "Puerto Rico law ordinarily requires a demonstration of the owner's or occupier's actual or constructive knowledge of the harm-causing condition"); see also Mas v. United States, 784 F. Supp. 945, 948 (D.P.R. 1992) aff'd, 984 F.2d 527 (1st Cir. 1993) (quoting Goose v. Hilton Hotels Int'l, Inc., 79 D.P.R. 523 (1956)("there can be no liability

for harm resulting from dangerous conditions of which [the business owner] does not know, and which a reasonable inspection would not have discovered, or from conditions from which no unreasonable risk was to be anticipated").

Regarding constructive knowledge, in turn, "... a plaintiff must prove either the existence of the dangerous condition for an unreasonable or excessive length of time or, in the absence of evidence regarding time, the owner's insufficient prevention policy or failure to implement the policy." Carlo-Blanco v. Inmobiliaria Comercial, Inc., No. 12-1978, 2014 WL 4805101, at *3 (D.P.R. Sept. 26, 2014). Normally, the issue is whether the defendant had sufficient time to realize that there was dangerous liquid on the floor or whether it used due diligence or care to carry out reasonable inspections of the premises for hazards.

In the instant case, however, its is the total opposite. The situation was very obvious and very evident, as testimony evidenced that there was a lot of water, and that VA employees (or VA contractors) were attempting to dry off the area. Therefore, the United States admittedly was well aware of the situation.

The United States claims that its actions were reasonable insofar as it did the best it could in a "flash flood" situation. Yet, Plaintiff posits there was no emergency, and she submits evidence from the National Weather Forecast Service for that day to establish that the amount of rainfall for that day was average. Her argument is that the lack of a roof or a leaky roof, in the area where she slipped, was the main cause of her accident. The issue then becomes whether Defendants acted reasonably in leaving such an area, where pedestrian traffic was high, without some type of cover to prevent its flooding. Once

flooded, as happened here, the issue is were its efforts to clean up the water (which were obviously unsuccessful) reasonable and were the signs placed enough notice to by-passers. In other words, did the United States act as a reasonably prudent person under the circumstances presented in this case? Were the rains, as the United States suggests, torrential and so sudden so as to perhaps fall under the *force majeure* rubric? Should the VA have had more attendants at the site, attempting to dry the floor? Would that have been more (or less) reasonable than the actions it took? Would the area have dried in time to prevent an accident? Seeing that there was still a lot of water in the area, should it have instead closed off the area, as Plaintiff posits? These are just a few of the questions left unanswered. At the end of the day, these are questions of fact that only a jury can answer.

A genuine issue of material fact exists if a reasonable jury could find for either party on the contested matter. Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003). In the instant case, the Court finds that a reasonable jury could find Plaintiff's accident was foreseeable simply because there was a leaky roof (or no roof, the parties' filings did not make that clear) in certain area of the VA complex, thus leaving it exposed to rain and precisely this type of accident. Further, because the VA placed three signs in the area, the jury could reasonably infer that it foresaw that someone could slip on the wet surface. Because forseeability is a central issue in premises liability claims, as it is an element of both breach of duty and proximate cause, Vázquez-Filippetti, 504 F.3d at 49, the resolution of this issue could go either way. "Not only ordinary fact questions, but also evaluative applications of legal standards (such as the concept of legal foreseeability) to the facts are

properly jury questions. In any case where there might be reasonable difference of opinion as to evaluative determinations . . . the question is one for the jury." Marshall, 828 F.2d at 849; see Pabón Escabí v. Axtmayer, 90 P.R.R. 20, 25 (1964) (noting whether a defendant is liable under a premises liability claim depends on the facts and circumstances of each case).

In sum, the members of the jury must resolve the issues of facts in controversy to determine whether the actions of the VA were reasonable and/or foreseeable in light of the evidence that will be presented to them. Under these circumstances, summary judgment is not proper.

For the reasons stated above, the United States Motion for Summary Judgment is DENIED.

**B.    Walsh Construction**.

**1.    Time Bar.**

Walsh's first contention is that Plaintiff's claim is time barred.  The Court details the relevant dates for purposes of this argument:

−    June 29, 2012- Plaintiff fell.

−    July 11, 2013-  Plaintiff filed her administrative claim.

−    December 19, 2013 - VA denies Plaintiff's administrative claim.

−    March 18, 2014 - Plaintiff filed her FTCA complaint in the present case.

It is clear that Plaintiff filed her administrative claim against the United States one year and twelve days after the day of the events object of the Complaint of caption

<u>Damaris Pereyra Carrasco v. United States of America, et al.</u>
Civil No. 14-1225 (CVR)
Opinion and Order
Page 19

occurred.[1]  The VA denied Plaintiff's administrative claim on December 19, 2013 adducing that Walsh was the entity performing construction work in the VA Hospital in the area where she fell.  Plaintiff then filed her Complaint against the United States and Walsh on March 18, 2014, within the six month window after her denial, within the year after she claims she knew her torfeasor's identity, and one year and eight months after the day of the alleged slip and fall.

Walsh claims Plaintiff failed to show due diligence in finding out the identity of the contractor because the record shows no evidence of any attempt by Plaintiff to identify the contractor in charge of construction and/or remodeling work in the VA hospital at the time of the events.  Thus, Walsh avers her claim, which was filed over a year since the events occurred, is time barred.

Plaintiff alleges that it was not until the receipt of the denial notice of her administrative claim by the VA that she first became aware of Walsh's existence and its relationship to the work being performed at the VA Hospital at the time of the events; this was on December 19, 2013.  Plaintiff admits her complaint was filed over a year after the accident occurred, but, the date it was filed fell within the year from the date she found out the tortfeasor's identity.  Therefore, Plaintiff posits that Puerto Rico law would allow her claim to proceed, and it cannot be time barred.

---

[1] Pursuant to federal law, a claimant has up to two (2) years from the date of the incident to bring forth an administrative claim against the United States.  28 U.S.C. sec. 2401 (b).  The filing of the administrative claim was thus timely. Once the claim is denied, the claimant then has six (6) months to file the lawsuit the federal court. This filing was also timely made in this case.

It has been well established that under Puerto Rico law, an action alleging civil liability for injuries stemming from fault or negligence must be filed no later than one year after the aggrieved person knew of the injury. P.R. Laws Ann. tit. 31, § 5298;  Arocho v. Kellner's Fireworks, Inc., No. 14-1556, 2015 WL 162974, at *2 (D.P.R.  January 13, 2015). This one year prescriptive period, in turn, begins to run from "the the  aggrieved person has knowledge" of the injury. P.R. Laws Ann. tit. 31, § 5298.  A plaintiff acquires notice of who caused the injury when he or she is "aware of some level of reasonable likelihood of legal liability on the part of the person or entity that caused the injury." Reyes-Santana v. Hosp. Ryder Mem'l, Inc., 130 F.Supp.2d 270, 275 (D.P.R. 2001); see also Rodríguez-Suris v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997) (A plaintiff has "knowledge" of the injury when she has "notice of the injury, plus notice of the person who caused it.")

Once aware, a plaintiff must exercise diligence "through minimal investigation" to ascertain the tortfeasor's name and institute a lawsuit.  Rosado Serrano v. E.I. Dupont de Nemours & Co., 797 F.Supp. 98, 103 (D.P.R. 1992).  This requirement that a plaintiff know who caused the injury assures that victims are able to seek compensation from a particular party.  Hodge v. Parke Davis & Co., 833 F.2d 6, 7 (1st Cir. 1987) (citations omitted).

Walsh asserts that Plaintiff failed to exercise due diligence in finding out its identity prior to the expiration of the prescriptive period.  Due diligence means "reasonable, active efforts to seek answers and clarify doubts."  Estate of Alicano Ayala v. Philip Morris, Inc., 263 F.Supp.2d 311, 320 (D.P.R. 2003).  A plaintiff can satisfy this diligence requirement by learning the identity of a defendant through the discovery process. Ramírez-Ortíz v.

Corporación Del Centro Cardiovascular, 994 F.Supp.2d 218, 222 n. 2,(D.P.R. 2014)(*citing* Ortíz Sanabria v. Corporación del Centro Cardiovascular, KLCE201400032, 2014 WL 902928, at \*10 (P.R. Cir. Jan. 31, 2014)) ("[I]t is reasonable to conclude that the prescriptive term for the claim ... began to run when [the plaintiff] found out who was responsible for [the] harm during discovery."); Velázquez v. Schindler Corp., 968 F.Supp.2d 475, 477-78 (D.P.R. 2013)("Through the discovery process, plaintiff learned the identity of Schindler.... Thus, plaintiff reasonably sought out the responsible party.").

In the instant case, it was not until the VA informed Plaintiff of Walsh's identity that she knew of the possible tortfeasor. Unfortunately for Walsh, the United States has specifically chosen to attend to tort claims by establishing the prerequisite of the filing of an administrative claim before a lawsuit can be filed in court (and obviously, discovery performed). The Court finds it is unreasonable to demand more of Plaintiff than following the process the Government has set out. The logical way Plaintiff could have (and did) become aware of the existence of a third party liable for her injuries was through the filing of an FTCA claim, which she did, precisely because she was precluded from filing in this Court first and consequently, performing official discovery prior to the government's answer to her FTCA claim. The United States, as owner of the premises where the accident occurred, was in a perfect position to inform Plaintiff of the identity of the tortfeasor. The fact that it took longer to do so, than the one year from the date of the accident occurred, is not Plaintiff's fault. Hence, the Court finds that Plaintiff was diligent in its administrative

process, and indeed, timely filed after knowing of Walsh's identity through the denial of her claim. Nothing more is required.

Further buttressing this conclusion is the fact that, as Plaintiff correctly states, had she chosen to file her judicial claim solely against the United States, and had Walsh been brought as a third party defendant by the United States for indemnity and contribution, Walsh would have not been able to raise any argument about a statute of limitations.

In view of the foregoing, Walsh's Motion for Summary Judgment on the time bar grounds is DENIED.

### 2.    **Failure to State a Claim**.

As a second ground for dismissal, Walsh alleges Plaintiff has failed to establish that Walsh performed work in the area where she slipped and fell and/or that Walsh's personnel was in charge of maintaining this particular area. As evidence thereof, Walsh submits its contract for the scope of work, which allegedly shows it was limited to the outpatient area of the hospital, and that no work was performed in the area of the ER where Plaintiff fell.

However, the United States has submitted an official document in this case, the denial of the administrative claim, which flatly denies this assertion, stating instead that Walsh *was* the entity in charge of the work in the area where Plaintiff fell. In fact, this was the precise reason for the VA's denial of Plaintiff's administrative claim, stating that: "[a] comprehensive investigation and review of the circumstances of the claims demonstrates

that the VA was not the owner, manager or financier of Walsh Construction Company, Puerto Rico, which was the company in charge of the construction site at which Mrs. Pereyra fell". (Walsh Exhibit 11).  Unfortunately, for Walsh, this official assertion by the United States has created a genuine issue of material fact as to who was working in, and thus, in charge of the area where Plaintiff suffered her fall.  The jury must do its work and determine whether or not Walsh is responsible. As such, Walsh's Motion for Summary Judgment on grounds for failure to state a claim is DENIED.


### C.     State Law Claims.

Finally, Defendants request dismissal of Plaintiff's state-law claims on the assumption the Court would favorably consider their petitions for dismissal of the federal claims.  See López Mulero v. Vélez Colón, 490 F.Supp.2d 214, 227 (D.P.R. 2007)  ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").  Considering the Court's previous analysis, where dismissal of the federal claims has been denied, dismissal of the state claims is also denied.

Damaris Pereyra Carrasco v. United States of America, et al.
Civil No. 14-1225 (CVR)
Opinion and Order
Page 24

---

## CONCLUSION

For the aforementioned reasons, Walsh's Motion for Summary Judgment and the

United States' Motion for Summary Judgment (Docket Nos. 41 and 46) are both DENIED.[2]

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 14th day of October, 2015.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE

---

[2] The Pre-Trial/Settlement Conference set for October 23, 2015 and the Jury/Non-Jury Trial set for November 2-6, 2015 will remain, as well as all other dates set in Docket No. 33.  Voir Dire, Jury Instructions and proposed Verdict Form due on or before October 28, 2015.